JUSTICE WEBER
dissents as follows:
I respectfully dissent from the majority opinion. Once again we are called upon to decide whether a lender has appropriately failed to restructure a distressed farm loan.
*422 The majority holds that the lender must consider the least cost analysis for restructuring. The federal statute at issue provides a list of five considerations that a lender is required to make when called upon to decide whether to foreclose on a party’s farm loan or to restructure the loan. The statute requires a lender to determine whether or not to restructure based upon:
1. whether the cost to the lender of restructuring a loan is equal to or less than the cost of foreclosure;
2. whether the borrower is applying all income over and above necessary and reasonable living and operating expenses to the payment of primary obligations;
3. whether the borrower has the financial capacity and the management skills to protect the collateral from diversion, dissipation or deterioration;
4. whether the borrower is capable of working out existing financial difficulties, reestablishing a viable operation and repaying the loan on a rescheduled basis; and
5. in the case of a distressed loan that is not delinquent, whether restructuring consistent with sound lending practices may be taken to reasonably ensure that the loan will not become a loan that is necessary to place in nonaccrual status. 12 U.S.C. § 2202a(d)(l)(A-E).
Here, the lender gave the following reasons for its denial of the second restructuring application — insufficient farm income to repay the loan, the Robsons did not provide the needed information on past operating history, the Robsons did not provide accurate projections and figures for the restructuring plan they supplied, the figures that were supplied did not match with former figures supplied to the agency, Farm Home had indicated that they would accelerate their loan because of large delinquencies and the Robson’s plan did not deal with this at all, no documents supporting part of their projected income had been presented, and no additional collateral had been offered as security despite the fact that the Robson’s plan called for an entire year lag time before a payment would be due.
This list shows that the lender did not arrive at this decision without thought. I note with interest that the Robsons had not paid a single payment on the first restructured loan, yet they expected the lender to consider a second restructure plan. The second plan included a “zero” figure for yearly interest and did not take into account the $34,765 payment owed to FCB yearly. Thus, the Robsons, in offering this plan, admitted that they had no intent to repay this or *423 any other loan, such as the Farm Home loan that was badly delinquent.
The Robsons’ plan did not contain accurate figures and in certain pivotal areas, contained no figures. A lender cannot make a “least cost” analysis if it does not have the appropriate information. The Robsons were informed that they could provide documentation for their figures to the credit review committee.
The majority would have all lenders in all situations make the “least cost” analysis involving foreclosure v. restructuring even if the lender, as in this case, has not been provided with the appropriate figures upon which it could make that decision. The majority would have all lenders do this far-from-simple task even if common sense and past performance have indicated that the farmers in question are without the sufficient ability to make the venture pay in any way.
The record of this case shows that AgAmerica made its own figures and set them beside the figures of the Robsons. The lender’s figures, while not giving the “least cost” analysis, showed clearly that the Robsons were not able to make this farm pay. The law specifically directs lenders to consider the borrower’s repayment capacity when making a “cost of foreclosure” figure. 12 U.S.C. § 2202a(a)(2)(A). The lender determined that there was no repayment capacity here. Why does the majority believe that returning this case to the District Court is going to have any affect at all on the outcome of the Robsons repayment capacity? The only thing accomplished by sending this case back is that the original $131,000 amount that was borrowed and is now close to $300,000 will be $400,000 by the time the case is settled.
There is nothing within the applicable legislation that indicates in any way that if the cost of restructuring is less than the cost of foreclosure the lender must restructure even if it is painfully obvious, as here, that the farmer cannot make the venture pay or repay his escalating loan. The wording of the law merely states that the lender must consider this along with the other four factors. But if the lender determines that the farmers do not have the capacity to repay the loan, all the restructuring in the world is not going to repay the lender. And putting a monetary figure on restructuring when that is not a plausible alternative, accomplishes nothing.
If the restructuring plan itself is flawed as here, the lender cannot make the ‘least cost” analysis in any meaningful way. Such a set of circumstances means that the lender must look to the other four concerns of the federal law because the lack of repayment capacity *424 has shown that they are needed for analysis — such criteria as whether the persons involved have the ability to handle a farm enterprise become the determining factor behind the decision.
I submit that the lender in this situation made the proper determination and that the District Court correctly analyzed the law and the lender’s requirements under it.
The courts do not belong in the middle of these restructuring decisions because we do not have the practical sense needed to evaluate the workings of the parties involved in the decision-making. That is why the federal scheme provided for a credit review committee to review the lender’s decision and not the courts. Such a credit review committee here affirmed denial of restructuring.
The majority’s harangue against the “unfettered discretion” of the lender in this case is unwarranted. The lender used common sense when interpreting the rules provided it by the legislature and did not do anything in opposition to legislative directive.
I strongly disagree with the majority opinion and would vote to affirm the District Court.
CHIEF JUSTICE TURNAGE concurs in the foregoing dissent.